2-14-305-6600 people to be admitted into the home of a plaintiff at the age of 18. Mr. Walker, you may proceed. Thank you. Mr. Walker, you may proceed. May it please the court, counsel, good morning, your honors. My name is Lucas Walker with the State Appellate Defender's Office. I represent the defendant, Mr. Wendell Walker, in this appeal. And we raise only one issue, and that is that the state failed to prove Mr. Walker guilty of the fourth count of unlawful delivery of a controlled substance within 1,000 feet of a school. There were four total counts. The first three counts contained evidence indicating the defendant's participation through either in-person interaction on behalf of the undercover officer and the defendant, or voice identification through testimony from that undercover officer as she spoke on the phone with the defendant. But this fourth count stands in stark contrast. It contains none of that. The defendant is not seen during the transaction. The defendant is not heard from during the transaction. The only evidence surrounding this fourth count consists of text messaging testimony or text messaging evidence in the form of testimony from undercover officer Koga. Basic general directional messages ultimately establishing essentially go to the same place, look for the same person. Now, in the technological modern age that we live in, were you able to unearth any cases from any jurisdiction in which a conviction was based on a text message? I was not able to find that. The state's brief also, they were apparently unable to find one as well. That's dead on here. But the critical point in this case, I believe, is the fact that this testimony regarding the text messages was objected to by defense counsel below. That objection was granted to the extent that although the text messaging testimony was allowed, there was a very clear plain language limiting instruction. And that was that the jury was only to consider that evidence for one narrow purpose, that being simply to explain the officer's actions, which, of course, going to that location, looking for the same person. What was the objection below that the trial court was responding to? The defense counsel objected that it was best evidence and hearsay because ultimately the problem was nobody who sent the messages. And so allowing it in along with that limiting instruction, both parties seem to be happy with that. And the state hasn't argued that should be reversed in any way. The evidence did suggest that there was at least two people that had access to that number, right? Four, six, one, seven, because on one occasion the number was used by someone else who the officer did not recognize. Correct? Yes, there were three people other than the defendant that had participated in these deliveries. Carolyn Johnson, John Johnson, Sylvia McNellis. And you're correct, Your Honor. October 19th, which I also believe is critical here, is a time where Officer Colvin, who, by the way, was the state's sole witness that they relied upon to identify the defendant's voice on phone calls, testified that she received a call back from the same number from someone who was not the defendant. She maintained that testimony now and the state points out in this brief. We also bring it to your attention as well. But regarding the transaction, you're talking about the work text messages, correct? Prior to the fourth transaction? Yes. Prior to the fourth transaction, there were a couple of text messages sent during the first transaction. Right. One by COGA, one in response, and then one by COGA, and then a phone call in response. Right. So it's very clear that the preferred method of communication was voice calls. And that first transaction, of course, had other evidence other than one text message. My point, I think the point is that the only relationship between the defendant and COGA, you know, their way of communicating was through that 4617 number, correct? And in person, correct. Right, and in person. So this last transaction that's set up, who else could it have been other than the defendant? Well, based on the evidence, Sylvie would probably be the best person. Based purely on the evidence, she was the only person that was at the third and fourth transaction. Yeah, but she's also the person who was doing the transactions for the defendant in the first. On the third transaction, correct. Right. So all those texts aren't to be taken for the truth of the matter. Okay. Oh, I'm sorry, go ahead. What if the trial court was in error in that ruling? In the ruling of the? The motion to eliminate, to limit. To limit the text messaging? Why isn't, I mean, that ruling, that's kind of mind boggling to me. Why would you rule that way? The jury, there was no motion to sever. The jury's heard all of this evidence concerning these transactions. And the text message are part and parcel of the negotiations and the relationship between the defendant and the officer. Well, ultimately there was evidence that so many people had participated. There was no concrete evidence that the defendant was the sole owner of that phone. So ultimately that limiting instruction was proper in that it really put it into proper perspective and allowed it for a very limited purpose. In any event, the defense either acceded to or requested the limiting instruction, right? Correct. So you're not now in a position to claim it was error, right? Oh, we're not. We're not claiming it was error. We're actually relying upon that limiting instruction and pointing out that other than that text messaging testimony, which was put in a very narrow box, which was not, although the state argued during that oral motion, we want this to provide circumstantial evidence of identity, circumstantial evidence of intent to deliver. Ultimately, that was not what it was allowed for. And other than that, they just have Sylvia delivering drugs within 1,000 feet of a school. They argued that in closing argument, though, did they not? Absolutely, yes. They were certain that this transaction or these text messages were circumstantial evidence that the defendant sent them based upon their prior dealings. Right. And defense counsel, in its rebuttal, reminded the jury of the limiting instruction and what that messaging testimony should be considered for. Did defense counsel object when the state was arguing? No. It wasn't preserved. It wasn't objected to. Ultimately, the jury was instructed as to the limiting instruction prior to hearing the evidence at trial. Defense counsel, as we just pointed out, reiterated that instruction of the text messaging testimony during its rebuttal. I'm sorry, during its closing argument. And, of course, during jury instructions prior to deliberations that was reiterated as well to the jury. My question is, though, how do we look at that then? I mean, how do we view that, those text messages? Are we limited by that limiting instruction, or can we take it, as the state did, for some type of evidence, circumstantial evidence of identity? No, that limiting instruction was clear, and we have to assume on review, as we must, that the jury considered it for that narrow purpose. And it should be kept in that narrow box. And in addition to that, like I said, all they have left is somebody other than the defendant delivering the drugs to the officer. And so ultimately, in order to find the defendant guilty of this fourth count, the jury is put in a position to, again, assuming they kept that testimony in the narrow box, is forced to essentially speculate or rely on what we argue amounts to and is analogous to propensity evidence. I mean, defendants are entitled to have their guilt or innocence determined based solely in reference to the crime which is charged. There are four crimes charged here, and that fourth count is just sparse evidence. There's no evidence at all that the defendant participated, especially where we remember that mere presence is not enough to prove something. If we have a continuing course of conduct between two individuals, let's say this was a telephone conversation between your client and the police. I mean, would then the first, when we start talking about the second one, would the first one be propensity evidence? When we start talking about the third one, would the first and the second be propensity evidence that you could object to as being improper? Or is this just a continuing course of conduct? Because you didn't move to sever, did you? There was no motion to sever. Well, doesn't it all come in as a continuing course of conduct? Well, ultimately, there has to be evidence sufficient to find the defendant guilty of each crime charge without ultimately having to rely on evidence relating to the other offenses. It may be true, but the course of conduct, the history of the dealings between the parties is always going to be relevant because, I mean, under your theory, you're calling it propensity evidence. Was the argument made before the jury that this was propensity evidence? No, the argument before, and we argue it's analogous to propensity evidence. Obviously, there was no motion to eliminate to bring out the crimes evidence, things like that. But ultimately, no, there was not an argument that it was propensity, but there was an argument that the fourth transaction just didn't have the evidence in and of itself to find the defendant guilty. That's right, but I don't know if you can argue that the fact that this phone was used for all the other transactions. Now, we forget about that, and we start the trial, and the evidence comes in, but there's somebody out of the blue gets a text message. So, I mean, I don't know if that's propensity evidence. So your strongest argument is going to be what? What I would consider the obvious one? How do we know somebody else didn't use the phone? He didn't link to somebody. It could have been anybody on the other end of the text. Is that your argument? Ultimately, that is the argument. Yes, because this was not a situation where it was a one-man operation. There's clear evidence that several people were involved. The October 19th phone call indicates somebody else, at least one other person, had access to the phone. The officers admitted on the stand they never even attempted to try to identify the subscriber of the phone. So the jury was forced to rely on evidence related to these other charges. What if the jury believed that October 19th, as the defendant said, that was him on the phone? Right. So then you take your argument on that and we set it aside. And we say that every contact that the officer had with the defendant was on that number. I'm sorry, every contact the officer had with someone through that number was with the defendant until we get to the last transaction. Why wouldn't that then, again, be some pretty good circumstantial evidence that it's, again, the defendant who's been using this phone and no other evidence of anybody else using it, again, setting aside the October 19th stuff? Well, because ultimately what that requires is utilizing evidence from everywhere but the fourth count evidence. The cases were tried together. I mean, there was no motion to sever. There was no motion to sever. But there does have to be sufficient evidence to find the defendant guilty based solely on that charge. And all of the evidence is to be considered by the jury. In your traditional drug transaction case, if the state only charts the first count, why would the other three earlier counts not have been admissible to prove? Say, for example, it's your typical drug investigation and the police officers are working up, working the defendant up to a larger amount. So they do the first buy of a gram. Then it's 10 grams. Then it's 15 grams. Then it's a kilo. And they only charge the kilo. Those first three transactions come in to establish course of conduct, the relationship, and the defendant's intent to be involved in those transactions. Correct? Right. And I think ultimately whether or not that defendant had – Why is it different here? We have to know the facts surrounding that ultimate charge because if there's no evidence the defendant participated but there's only evidence somebody else did – Well, ultimately – It's set up through a text and the transaction takes place just like the other transactions did, but the defendant doesn't personally appear. It's one of his cohorts that the officer had met through the prior transactions. Right. I think if there's evidence that other people could have had access to that phone, it's just not enough. I think it's certainly – That's your argument. Yeah. Here's what you're trying to do inadvertently, and it has some intuitive appeal, but, I mean, it's a short argument. You're saying the fourth count, does the fact that the transaction was arranged through a text that could have been sent by anybody, anybody could have access to the phone, can that ever establish proof beyond a reasonable doubt because we don't know who was texting on the other end? That's all true if that's all the evidence is. You're asking us to view this evidence in that light, and we're saying we can't. The entire history where he was using the phone for every other transaction comes in as circumstantial evidence of his guilt in this fourth count. Do you see that? I certainly – This is to forget about the evidence in the history before that and look at this one count like it just happened one day to the exclusion of everything else. Right. Now, I think, of course, the other counts can be considered, but ultimately it can't be the sole reason to find the definite guilty of that fourth count. And, again, what's critical in this argument is that that text messaging testimony related to the fourth count was not let in for any purpose whatsoever. It was a very narrow, limited purpose, and that was only to consider the officer's actions, not for circumstantial evidence of identity or intent to deliver. So without that, putting that in that narrow box, all they have is Sylvia delivering the drugs to the undercover officer. But how do we know what the jury was thinking? I mean, how do we know that the defense agreed to give this instruction? It was given to the jury. They found him guilty after ostensibly considering this limiting instruction that the defense asked for and presumably followed the defense request. How do we get a writing? Because assuming that they did follow that limiting instruction, what's left is just insufficient to find the defendant guilty on that fourth count. It requires, the analysis requires to go outside of that fourth count because what is related directly to that fourth count is just insufficient to find the defendant had participated. There's no presence. There's no observation. I mean, the state cited some cases that seem to be maybe for the general principle that a defendant can be found guilty through accountability of this offense. But in all those cases, the defendant is observed participating in the offense during the transaction in some way. Was an accountability instruction given as well? There was, yes. It doesn't answer the problem because obviously the argument is going to be, and I'm sure you're not going to deny this, that the defendant was the quote unquote primary user of this phone at some point, correct? Up until the last transaction, at least. Based on the evidence in these transactions, of course. So, you know, can't the jury reasonably infer or believe that obviously he was using it all the time and coincidentally the same person shows up on this last body. Sylvia? Sylvia, whatever the name is. That the defendant was accountable, that somehow he aided and abetted and facilitated the transaction. Can't the jury reasonably conclude that? I think to do that, Your Honor, my response would be that that really requires speculation on the part of the jury. Well, how was the last transaction set up? Exclusively through text messaging. That was it. And I do want to point out, I'll bring this up, you know, it's notable that leading up to the third transaction, which occurred on October 23rd, it was essentially all voice calls and in-person interaction. And after October 23rd, ending through October, going into November, where this one occurred on November 5th, there's nothing but text messages. So there's a very distinct change in the method of communication. Thank you for your time. We'll just ask that you reverse that now. Thank you. Thank you. We will have time for rebuttal argument. Ms. Joseph? Good morning, Your Honors. May it please the Court? Counsel? I think, Your Honors, we're really touching on what this case is about, and it's about the jury determining whether the defendant was part of this final transaction. We did not have a motion to sever. They were hearing evidence of all the counts, and even with the limiting instruction in this case, which was looking limited, the jury was limited to look at the text messages for what the officer did. The officer is part of an ongoing drug investigation. Everything she has done before is guiding her responses to the text messages she is receiving in the fourth transaction. The jury was not obligated to... Consider the evidence of the abstract? Yeah, they weren't obligated to remove themselves from everything that happened before when this is part of an ongoing investigation. You have the other transactions as a course of conduct. There was communication both via vocal talking on the phone, via text messages, in person, and the line of communication did not change in whole after the 23rd. There were attempts at invoice calls made, but nobody was answering their phones or leaving messages or returning calls. If the jury used these text messages as circumstantial evidence of identification of the defendant as the person who was doing the texting, were they not violating the court's limiting instruction? The people do not believe that was going beyond the officer's actions. She's reasonably relying on the fact of her continuing course of conduct with the defendant in this case. So, as far as her actions go and what she did, was in direct response to text messages from a person she believed was the defendant based on the fact that I'm now going to the same location as the third transaction. I'm now dealing in person with the same person I dealt with in the third transaction. It's... The jury didn't have to leave common sense at the door when they're put the limiting instruction on what the officer did because of the course of conduct that is being considered. How do you respond to the hurt of this argument? And this happens. Family members can borrow a phone. Oh, absolutely. Somebody could, you know, use a phone. The defendant could have given the phone to a family member, anyone, for a missing, innocuous purpose. They see him and have a chance to make some money here and they follow up and he's being prosecuted and convicted on something he didn't know about. So how do you respond to that argument? Well, number one, there is no black letter law requiring proof of ownership of a phone or an electronic... in electronic messages. While we have developing technology coming in, it does not seem to be necessary to go outside of the current rules of evidence to consider that information. You have the case like Downand. You're considering the admissibility of emails without putting on evidence of the IP user. As you said, the other day, a co-worker had her computer open. I could have just sat and typed an email. It's going to be funny. And it can happen. I'm not saying it can't. But the jury is still in the position to make that determination of who the author of those text messages were. And they had a continuing course of conduct. There was one aberrant phone call where the officer did not believe it was the defendant on the phone. The jury heard the phone call. The jury heard the officer say she didn't believe it was him. The jury also heard the defendant on the following phone call saying, oh, yeah, that was me. There's... He also said he didn't recognize her on the phone. It's not unlikely that a perpetrator is going to try to conceal his identity. If he wasn't recognizing her voice, he may have gone off and tried to disguise his own. But it is the jury's determination. They heard all of this evidence. They heard this pattern of conduct that's going on. We don't... There are a couple policy issues here in why we don't want to create some black-letter law requiring them to bring in a phone record to show the ownership. Number one, it's not necessarily the owner of the phone. It's who's using the phone. And, yes, these situations, it's more difficult to prove than a voice that you can identify by hearing their voice and meeting them in person. But you also have to... You don't want to say, well, you have to bring in a phone record, because then you're creating a rebuttable presumption that the name on that phone record, the owner of the phone, is the user of the phone. And you don't want to go into shifting the burden of proof to the defendant to say it wasn't me using the phone. I don't know if I'm getting your point. You're saying if you're pressing this case and the records show that the defendant is the owner of the phone, you wouldn't want to bring that in? I'm not saying you wouldn't want to bring it in. I'm saying that creating a rule that you need that as proof of who was using the phone, it's not the only proof necessary. You're basing it on the circumstantial evidence of everything, not one particular piece of evidence or type of evidence that's necessary. Officer Kogut put herself out as a drug user, correct? I'm sorry, as a... When her investigation, her undercover investigation began, according to the testimony, her activities involved putting herself out in the public domain as a user. In the community, yes. Saying I'm interested in buying drugs. And we don't know from the evidence how many people she gave her number to, do we? No. We don't know directly how... Who acquired her number and how they know. We have no evidence of that. I guess the defense theory is theoretically there was more than one drug dealer using this particular number. And based upon the absence of any phone conversations, it's quite possible that totally unrelated to the defense behavior, somebody else was using a phone call for that fourth transaction and arranged the transaction. Is that possible? Possible, yes. Because anybody can pick up a phone if it's unlocked. A lot of these phones are bought and disposed of. You don't want to encourage, you also don't want to encourage criminal activity via text message on disposable phones. You come out with something saying, well, you can never prove that a text message belongs to a particular person. Everybody is going to go out in whatever the criminal activity is. Yeah, but is that our role? Do we set policy here or do we decide whether the defendant is guilty or innocent based on the evidence presented? We don't do any policy issues in determining guilt or innocence. No, you do not, Your Honor. Okay. But in this case, there was evidence that the defendant was but for one aberrant phone call that he claims he was a part of. His was the sole use of that phone regardless of who may have owned the phone. He was the one using it. The jury could make that determined reasonably infer he was the one using it on the fourth transaction from the prior transactions. I take it you did extensive research and you found no cases anywhere in the United States where the conviction was based on a text message? Anything regarding text messages were more in regards to the admissibility of the evidence rather than the sufficiency of the evidence. So I'm not finding, I haven't found anything. Well, you don't have to rule that because as you suggested, it isn't whether or not a text message in and of itself in the abstract would be sufficient. You can see the problems with that. Here there's the history of the course of conduct that comes in. It isn't simply one text message in one day. No, it is not, Your Honor. And that's why the jury could, they were the ones resolving the conflict of the aberrant phone call. Ultimately, they had, there was a conflict of evidence of who made that phone call or who picked up the phone on the 19th. Well, not only that, this is where I thought that Officer Koga testified that when there was a follow-up conversation, he said it wasn't the defendant admitting it was his voice. Yes. The follow-up, so that's what I'm saying. When the jury heard all of the evidence, they heard the phone calls, it was for them to resolve whether the defendant was using the phone that day and whether that was, as I said, an aberrant use by somebody else or whether he was the sole use throughout the entire time. Did the officer testify that she believed it was the defendant texting her on the last transaction? I honestly don't recall. She just, as far as I know, she just received a text from the number. The trial judge instructed the jury as to the limiting instruction before reading that text message, and she said she was heading out. It doesn't necessarily say that, but that's what her contact was on the same number the entire time. I thought she texted on that last date first. You said she received a text first? I thought she texted 4617 first. Oh, I'm sorry, on the fifth. On the fourth transaction. Yes, I'm sorry, because I'm looking, I'm sorry, the first, their first texting about the fourth transaction began on the 29th of October, and he, or the sender of the text message from the phone at issue was the first to text. Then there was back and forth texting. There were some attempts at phone calls that were not completed, but as far as on the fifth, the date of the fourth transaction, she did initiate the first text asking if he'd be around, if you going to be around at four. So the fact that she's initiating the text and she's asking the person she's been asking all along to engage in a transaction, again, the jury could reasonably infer her belief that she was dealing with the same person she'd been dealing with all along. And that's why she responded in the way she did to the text message, going to the location, told on that cell phone because she knew she had been there before, meeting the same person. She understood who that person was. This was knowledge within the previous transaction between the two. Let me ask you a question about this limiting instruction. When you really start to reflect on it, it's a little perplexing. Evidence that a witness had a conversation through text messaging is being offered at trial is not being offered to the truth of the matter asserted, but to explain that the witness, the actions taken by the witness that may be considered by you only for that limited purpose. So this instruction says you can't consider that as evidence of guilt, right? Isn't that what it's saying? No. It's not saying that? What is it saying? It's only telling you that you can consider it for what the officer was doing in response to receiving the text message. It's only the evidence of guilt. If it's the officer's, it only relates to the officer's actions. I'm not sure what the purpose of this instruction is. If you can only consider it to show what the officer did in response to something, how is it evidence of guilt? I mean, this instruction taking literally could, you know, here's the further implications. The people. Your argument is the officer's response is the evidence of guilt. What the officer did was based on her previous conduct. Her conduct was dictated by the. By the previous conduct under the guidance of the defendant. But in any event, the state, everybody agreed to this instruction, right, for some reason? Everybody. Well, the people with when the motion eliminate was argued, the people did argue that did argue for that showing identity. The trial judge did not give that specifically as part of the instruction. Not entirely sure why the trial judge did what they did as identity would take also take it out of propensity evidence. Showing intent would also take it out of propensity evidence. So there were other things that the judge could have allowed the text message to be considered for specifically. But that is not what the judge did. Why they found it just as the course of conduct. The text messages is also tied to the defendant in some way. Our admissions. They're not hearsay. Because they're directing the transaction. Yes. Behavior or any behavior or statements of the accused that are relevant are considered admissions. They're not hearsay. Correct. Their admissions by party. They would be. However, in this case, the judge limited to what they could consider it for. So they were not being able to be considered for the truth of the matter asserted. So the jury was not to be considering them as admissions of guilt. There wasn't any real argument about authentication then. Because the judge basically took this position that they were coming in. I mean, Justice Burkett's talking about an admission, but an admission has to be properly authenticated. And we never got to that point in the trial court. This was a lot like the Davis case, which it was the text messages that were being used in that case. I believe it was for the investigation. Can I finish the question? For the investigation and as evidence of intent to deliver. And they did not authenticate it because the text messages themselves, the documentation of the text messages, were not being entered. And because of the limited purpose for which they were being entered. So the use of the text messages in this case would fall more along the lines of Davis than the ones where you needed to actually authenticate. The physical document or the photograph of the text message on the phone. So the jury never saw what the actual text message was. Thank you. Mr. Walker. Just briefly, Your Honors, some points we'd like to make. First, we'd like to point out the communication on the part of that 4617 number after the third transaction did change. Although maybe there were some missed phone calls on the part of COCO, but ultimately it was an exclusive text message after that third transaction. And the limiting instruction is clear. It is going outside the bounds of this limiting instruction to consider the text messaging testimony for any other purpose. We'll point out that during the jury instructions prior to deliberations, another instruction was also included, which was any evidence that was received for a limited purpose should not be considered by you for any other purpose. So it couldn't be more clear that it was only considered for explaining the actions of Officer COCO. Now, I understand. That's what it says. Right. But how do we know the jury didn't follow up? We have to assume they did. We have to assume that. And assuming that, there's just insufficient evidence to find the defendant had participated in the fourth count. But we don't want to reiterate what we've already argued, or we want to make sure we make some points unless you have further questions on that. People v. Downing was a case referenced by the State. That's distinguishable in that case. It was a sexual abuse case where there were omissions in the defendant's email messages to the victim regarding their sexual relationship. There was no objection. There was no similar limiting instruction. It's completely distinguishable. As far as people v. Davis, again, no objection. And in that case, there was no question it was the defendant's phone. He was confronted with the phone, with the text messaging, and the opinion is very clear that that was the defendant's phone. There was no question, no indication that anybody else had ever participated in any sort of deliveries with him. And as to that October 19th phone call, you know, it's, of course, the jury has, they can make their own decision as to who was that person on that phone call. Now, we argue and we point out that we believe upon this court's review of the recording, it'll be very obvious that it's not the defendant. We do reiterate that COVID was the State's main witness they relied upon to prove the defendant's voice on the phone previously. And all of the jury is given deference. It's not given absolute deference. Another point we want to make is that during that time. It's not fair to say you can establish that it was not the defendant's voice. Okay, that's what COVID said, right? She was used by, yes, she was used by the State to identify his participation in the prior offenses through voice identification of phone calls because she had also met him in person. And then at once she said it wasn't him. And she said the October 19th phone call was not him. Okay. And yet didn't the defendant admit it was him? He said it was him. And again, I recognize his voice. The defendant here, notwithstanding what I thought was somebody else, he told me it was him. Oh, no, we're not disputing that he said it was him. It's definitely he said, she said. We're just pointing out that even if the jury believed that, it doesn't mean this court has to. And ultimately, we also want to point out about that October 19th phone call. The State did argue that during that phone call, when the defendant said subsequent to that phone call, when he said, no, that was me. They said, well, that's his assertion of ownership of the phone. Well, that's not the assertion of ownership of a phone. That's just saying that was me on the phone call. Something obviously completely different than saying, no, that's my phone. I only use it. Nowhere on this record, unlike in Davis, is there any sort of indication that the defendant was the sole user of this cell phone. There's no indication that several people were involved in the deliveries. You said if the jury bought that argument, bought that statement from the defendant, there's no reason that we have to. I mean, have we lost sight of the Collins standard here? I mean, we have to see whether any rational fact finder could have found this. So, I mean, if a rational fact finder, a jury, could have found that it was a defendant on that October 19th call, we can't reverse that based on that situation. Well, of course, if you find that any rational fact finder could have found that. But we just point out that we believe after reviewing both of the recording, that recording compared to the other recordings, that it will be very obvious it's not the defendant. And importantly, Officer Kodak was the sole witness the state relied upon to identify the defendant's voice. And at no point did she turn on her testimony and say, maybe it was him. She maintained, no, I spoke to someone, and that was not the defendant. So we just point that out. Ultimately, it's sort of a wash, because if the defendant was lying, and when he said, oh, that's me, and he was lying about it, well, that just shows someone else had access to the phone. And it would help our case. But if it's the defendant's not lying, and it really wasn't, then, okay, we already know he's talked on the phone before. Ultimately, we really focus on the evidence surrounding the fourth transaction and argue that that is insufficient. Did the officer testify, as I asked opposing counsel, do you recall her testifying that she believed it was the defendant who was texting her? I do not recall. I recall it was very, the fact that there was that limiting instruction, I believe it was gone through very technically as far as what text did you receive, what did you say, et cetera. But I don't recall that there was ever a testimony given. Okay, great. So if there are no more questions, we can just reiterate our request that this court reverse the fourth count. I thank you for your time. All right, we thank both attorneys for their ideas here today. The case will be taken under advisement, and we are adjourned.